El Juez Asociado Sr. De Jesús no intervino.

ANDRÉS CÁMARA, demandante y apelante, *v.* ÁNGEL RODRÍGUEZ Y PÉREZ BÁRCENA Y SU ESPOSA, ETELVINA ALONSO, demandados y apelados.

Núm. 9664.—*Sometido:* Abril 9, 1948. *Resuelto:* Julio 9, 1948.

_____

*José Sabater,* abogado del apelante; *C. Ruiz Nazario,* abogado del demandado apelado; *F. L. San Miguel,* abogado de la demandada apelada.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

En acción sobre otorgamiento de escritura instada ante la Corte de Distrito de Mayagüez por Andrés Cámara contra Angel Rodríguez y Pérez Bárcena y su esposa, Etelvina Alonso, se solicita se dicte sentencia declarando que el demandado vendió al demandante y éste le compró una finca urbana, radicada en la calle Méndez Vigo, esquina a Peral, de Mayagüez, por precio de $40,000, de los cuales el demandante pagó $10,000 a cuenta, y que una vez firme la sentencia se ordene a ambos demandados a otorgar escritura de compraventa a favor de dicho demandante.

Comparecieron separadamente los demandados y luego de suscitarse y resolverse determinadas cuestiones de derecho que es innecesario especificar y de radicarse las contestaciones de rigor fué el pleito a juicio, presentando los demandados sendas mociones de *nonsuit* al terminar la prueba del demandante. La corte inferior dictó sentencia declarando con lugar las referidas mociones y de la sentencia así dictada apeló el demandante para ante este Tribunal, alegando en apoyo de su recurso que la corte inferior cometió error al resolver: (*a*) que no había prueba sobre la relación de agencia ostentada por el testigo Nicolás Vera; (*b*) que el edificio vendido era un bien ganancial; y (*c*) al condenar al demandante al pago de honorarios de abogado.

Como una moción de nonsuit tiene el efecto de una excepción previa a la prueba, se hace necesario analizar la

misma para determinar si la corte a quo estuvo justificada o no en declarar con lugar las presentadas en este caso.

 *Regino González* fué llamado un día por Nicolás Vera, quien le dijo que el edificio La Bolsa estaba en venta por la suma de $40,000 y que su comisión le sería pagada por el comprador. Habló con el demandante y éste le dijo que estaba dispuesto a comprar el referido edificio por los $40,000 y a pagarle un 2-1/2 por ciento de comisión. En ningún momento se entrevistó con el demandado Rodríguez. *Nicolás Vera* conoce a Rodríguez y dirigió a éste varias cartas,(¹) en respuesta a las cuales, en 17 de octubre de 1945, recibió la que se copia a continuación:

"Caguas, P. R., Octubre 17 de 1945

"Sr. Don Nicolás Vera
Mayagüez, P. R.

Estimado Nico:

"Tengo tus estimadas del 11 y 13, pensé contestarlas personalmente, porque estuve cerca de ésa, pero se me hizo tarde, no obs-

---

(¹)Las cartas escritas por Nicolás Vera al demandado Ángel Rodríguez en 11 y 13 de octubre, leen así:

"Octubre 11-1945

"Sr. Dn. Ángel Rodríguez,
Caguas, P. R.

Estimado Ángel:

"Sobre el asunto de la tasación no ha podido hacerse nada en concreto, ya que estos pasos llevan tiempo, pero me he aprovechado de otros quejosos para hacer llegar nuestra protesta ante el Tesorero.

"La ola de protesta de los contribuyentes es general pero me temo que el tasador tenga instrucciones de subir la propiedad y sea por esto que esté actuando en esa forma.

"He corrido la voz de vender a varios agentes pero sin llegar a precio determinado para hacer gestiones seguras de oferta. Es preciso darle un precio razonable de venta a estos agentes ya que ellos trabajan bajo esa base para sacar algún beneficio en la transacción.

"Es indiscutible que nosotros no podemos sostener estas propiedades con el margen de entrada que nos sobra después de pagar las contribuciones, por ejemplo La Habanera que renta 175 pesos menos $10 de solar son $165. De acuerdo a la nueva tasación de $38,820 y a razón del $2.75 por millar en contribución, serían $1,064.55 al año. Sobrarían $915.45 de la renta que al mes serían $76.29.

"No es cosa fácil subir la renta porque el problema de Mayagüez es la necesidad de viviendas pero no locales de esta naturaleza. Yo espero que Ud.

tante, la semana entrante D.M. tenemos viaje para ésa con Tel, y podríamos hablar detenidamente sobre el precio de las propiedades, de manera que si le damos la oportunidad a algún agente, determinemos claro lo que han de ganar de comisión, cosa muy importante para evitar líos.

"Tal como está YOLANDE y LA HABANERA, si encontramos comprador para ellas (sin arreglos de ninguna índole) considero que el primero vale bien $20,000 y $24,000 el segundo. Está claro que si no hemos de conseguir rebaja en la tasación podríamos hasta modificar el mismo, ya que sobre lo que pagaría de contribuciones no habría intereses adecuados en dicha inversión, y entonces si no se consigue un aumento en el alquiler, sería asunto de rebajar el pre-

me dé el precio último que podríamos llegar con Yolande y La Habanera y si Ud. quiere de la Bolsa también para yo hacer diligencias con los agentes. Desde luego que el precio que le pido es para llegar a él en último extremo ya que yo haré lo posible de sacar el mayor beneficio posible.

"Yo no sé cuánto le renta La Bolsa pero Ud. tendría que pagar por $45,000 pesos de tasación la suma de $105.22 al mes.

"Espero considere esto y me avise a la mayor brevedad posible pues para estas clases de propiedades no se consiguen compradores a menudo y si hubiere alguno hay que aprovecharlo.

"En espera de su pronta contestación, quedo de usted como siempre suyo affmo.,

(Firmado) Nico.''

"Oct. 13-1945

"Sr. Dn. Ángel Rodríguez,
Caguas, P. R.
 Estimado Ángel:
 "Dos letras para decirle que después que mandé mi protesta al Tesorero sobre la tasación de La Habanera y Yolande que es a lo que yo puedo referirme, estuvo hoy en casa un hermano del Lcdo. Ramos Antonini jefe de rentas internas para tomarme una declaración jurada de lo que sucedió entre el tasador y nosotros en relación a la tasación y de lo inútil de nuestra protesta ante el tasador. Como es posible que se siga esta investigación y posiblemente lleguen hasta Ud., le mando copia de mi declaración jurada, para que usted esté enterado.

"Según me dijo el señor Ramos, él está investigando otras personas que han sido objeto de protestas y de mal trato por el tasador entre los que se encuentra el señor Ángel Archilla Cabrera, persona muy considerada en nuestra comunidad.

"En cuanto al trato que este Sr. nos diera como Ud. verá no he dicho nada.

"Supongo haya recibido mi carta sobre el asunto de la venta de las casas la que tengo interés me conteste pronto.

"Sin nada más por hoy y en espera de su grata contestación quedo suyo affmo.''

cio. Esto de aumentar el alquiler, comprendo que no son muchas las casas que pueden hacerlo, pero teniendo en cuenta que Yolande por lo menos no hallaría otro de esas proporciones, y que el cambio de la maquinaria les costaría un pico en la mudanza, bien podrían aumentarlo.

"La Bolsa actualmente renta $325, y como le dije al tasador, aceptaría $40,000 de contado sin comisión para el corredor, pudiendo sacar él lo que pueda del comprador.

"Hasta la fecha no se ha presentado nadie investigando sobre el asunto del tasador, y caso que se presente, me servirá de referencia lo que tú has dicho.

"Gracias por la atención y esperando verte la entrante semana, quedo con saludos,

Tuyo affmo. S.S.

(Firmado) Ángel Rodríguez."

Después de Vera recibir esa carta, Rodríguez le visitó y como resultado de la conversación por ellos tenida llegó a la conclusión de que Rodríguez estaba decidido a vender por $40,000. Llamó entonces a Regino González y le sugirió que saliera a ver si podía vender el edificio La Bolsa. Cuando Regino le informó que Cámara estaba dispuesto a comprarlo, visitó a éste y después Cámara le envió $10,000 a cuenta, cantidad que él depositó a su propio nombre en el Banco Crédito y Ahorro Ponceño y que tuvo a la disposición de Rodríguez. Más tarde llamó a Rodríguez por teléfono a Caguas, desde la oficina del Lic. Moscoso, le informó que había encontrado un comprador para el edificio La Bolsa, sin indicarle el nombre, y Rodríguez le autorizó a preparar el documento correspondiente. En vista de ello dió instrucciones al Lic. Moscoso de que preparara la escritura de compraventa. Dos días después Rodríguez le llamó por teléfono y le informó que el negocio no podía hacerse porque su esposa, la codemandada Etelvina Alonso, no quería vender. *Mario Acosta* es empleado de Cámara y llevó a Nicolás Vera los $10,000 a cuenta. *Edgardo Delgado* es empleado del Banco Crédito y Ahorro Ponceño y le consta que Vera depositó en dicho Banco, a nombre propio, la suma de

$10,000. No hay indicio alguno de que esa cantidad esté allí a la disposición del demandado Rodríguez. *Guillermo H. Moscoso* es abogado notario y desde su oficina el testigo Nicolás Vera llamó al demandado Rodríguez. No le consta quién era la persona con quien Vera hablaba, pero sí que Vera le dijo a él: Dice don Angel que puede hacer la escritura." Vera se refería al edificio La Bolsa, aunque desde luego él no sabía quién era la persona que estaba al otro extremo de la línea telefónica. *Andrés Cámara* es el demandante. El 6 de noviembre de 1945, como a las 9 de la mañana, se presentó Regino González en su oficina y le ofreció en venta el edificio La Bolsa por $40,000, debiendo él pagar $1,000 de comisión a Regino. Contestó que estaba dispuesto a comprar dicho edificio. Más tarde le visitaron Nicolás Vera y Regino, ratificando él su propósito de efectuar la compra. Se convino en que le diera a Vera un anticipo de $10,000 y él así lo hizo, remitiendo a éste la aludida cantidad con su empleado Mario Acosta. Después de haberse acordado que el demandado Angel Rodríguez iría a Mayagüez a firmar la escritura, Nicolás Vera le visitó y le indicó que Rodríguez se había arrepentido. En ningún momento el demandante Cámara ha hablado con Rodríguez ni con la esposa de éste, ni ha convenido nada con ellos.

Hasta ahí la prueba del demandante, terminada la cual, según ya hemos indicado, ambos demandados por sus respectivos abogados presentaron mociones de nonsuit, indicando además la demandada Etelvina Alonso que no presentaría prueba y que solicitaba se dictara sentencia a base de esa moción.

Dispone el artículo 1211 del Código Civil, Edición de 1930, que "Ninguno puede contratar a nombre de otro sin estar por éste autorizado o sin que tenga por la ley su representación legal" y que "El contrato celebrado a nombre de otro por quien no tenga su autorización o representación legal será nulo, a no ser que lo ratifique la persona a cuyo

nombre se otorgue antes de ser revocado por la otra parte contratante.'' Provee también el indicado cuerpo legal que ''Por el contrato de mandato se obliga una persona a prestar algún servicio o hacer alguna cosa, por cuenta o encargo de otra'' y que ''Para transigir, enajenar, hipotecar o ejecutar cualquier otro acto de riguroso dominio, se necesita mandato expreso.'' Artículos 1600 y 1604, respectivamente. ¿Estaba Nicolás Vera autorizado o tenía la representación legal ¡del demandado Angel Rodríguez y su esposa para efectuar el contrato de compraventa del edificio La Bolsa y existió un mandato expreso de parte de Rodríguez autorizando a Vera a vender dicho edificio? A nuestro juicio no. En la carta de 11 de octubre que ha sido copiada literalmente en la nota (1) el testigo Vera habla al demandado Rodríguez del alza en las tasaciones de las propiedades y solicita de éste que le dé el precio último a que se podrían vender los edificios Yolande y Habanera y le dice: ''y si Ud. quiere de La Bolsa también para yo hacer diligencias con los agentes.'' Le indica además ''yo no sé cuánto le renta La Bolsa pero Ud. tendría que pagar por 45,000 pesos de tasación la suma de $105.22 al mes.'' Su carta de esa fecha termina así ''Espero considere esto y me avise a la mayor brevedad posible pues para estas clases de propiedades no se consiguen compradores a menudo y si hubiera alguno hay que aprovecharlo.'' En la de octubre 13, que también figura en la nota (1), después de indicarle Vera a Rodríguez que ha mandado su protesta al Tesorero en relación con los edificios Habanera y Yolande, le dice: ''Supongo haya recibido mi carta sobre el asunto de la venta de las casas, la que tengo interés me conteste pronto.'' Fué en respuesta a esas dos cartas que el demandado Rodríguez, en 17 de octubre de 1945 escribió la que más arriba hemos copiado en su integridad en el cuerpo de esta opinión. Se verá que en ella acusa recibo a Vera de las cartas de octubre 11 y 13 y que le indica que la semana entrante tiene viaje para Maya-

güez y entonces podrían hablar detenidamente sobre el precio de las propiedades; que en cuanto a los edificios Yolande y la Habanera le manifiesta que "si encontramos comprador para ellas (sin arreglo de ninguna índole) considero que el primero vale bien $20,000 y $24,000 el segundo." Y que en cuanto al edificio aquí en controversia meramente dice: "La Bolsa actualmente renta $325 y como le dije al tasador, aceptaría $40,000 de contado sin comisión para el corredor, pudiendo sacar él lo que pueda del comprador." Nada más se dice sobre el edificio La Bolsa en la referida correspondencia. Y de ella no se desprende que el demandado Rodríguez en forma alguna autorizara a Nicolás Vera para ofrecer en venta el edificio La Bolsa; mucho menos que le autorizara de manera expresa para efectuar la enajenación. El indicar Rodríguez en una carta, que como le dijo al tasador aceptaría $40,000 de contado, no equivale al mandato expreso requerido por la ley para la enajenación o ejecución de un acto de riguroso dominio, como lo es la venta de un inmueble. Ese párrafo de la indicada carta del 17 de octubre puede interpretarse como un mero argumento aducido por Rodríguez al tasador para que éste rebajara la tasación del edificio en cuestión. Es cierto que el testigo Vera declaró que en adición a la referida carta el demandado Rodríguez le visitó y que como resultado de la conversación por ellos tenida él llegó a la conclusión de que éste quería vender el edificio La Bolsa. Pero él no nos indica, sin embargo, cuál fué la conversación, ni por qué llegó a la conclusión de que quedaba autorizado para vender el edificio aquí en controversia; y aunque admitió que si bien cobraba las rentas de los edificios Yolande y la Habanera, manifestó que nunca había administrado el edificio La Bolsa, y en respuesta a la pregunta "¿Pero Ud. no le preguntó en su carta de octubre 11 si estaba dispuesto a vender La Bolsa?" contestó lo siguiente: "No, La Bolsa, no. Con relación a La Bolsa anteriormente yo no le había dicho nada."

Tomando en conjunto la prueba oral y documental aducida por el demandante y aceptando su veracidad a los fines de las mociones presentadas, llegamos a la conclusión de que no existe la autorización específica ni el mandato expreso requeridos por la ley para que Nicolás Vera vendiera el edificio La Bolsa. Siendo ello así, el demandante no puede obligar a los demandados a que le vendan la propiedad en cuestión. Muy bien podríamos repetir aquí lo dicho por este Tribunal en *Maceira* v. *Pietri, et al.*, 30 D.P.R. 587, 589, a saber: "Si fuera sostenida la teoría de que las palabras y manifestaciones del mandatario obligarían al principal entonces todo cocinero, todo empleado y todo mandatario podría irremisiblemente obligar a su principal. El mandato debe establecerse mediante prueba positiva, o por un verdadero *estoppel* y en los autos no encontramos ni una ni otra cosa." Véanse también *Ramos de Anaya* v. *López,* 36 D.P.R. 499, 502; y *El Pueblo* v. *South Atlantic Fruit Co.,* 25 D.P.R. 665, 669. El primer error señalado no ha sido cometido por la corte inferior.

La prueba aducida por el demandante no revela que la esposa del demandado interviniera en forma alguna en la transacción. Empero, dada la conclusión a que hemos llegado en relación con el primer error discutido se hace innecesario determinar si la propiedad aquí envuelta era privativa o ganancial.

En cuanto al tercer señalamiento concierne, tomando en consideración la prueba aducida creemos que la corte inferior no cometió error al condenar al demandante a pagar honorarios de abogado.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. De Jesús no intervino.