ESTHER MARIANI BARTOLI DE CHRISTIAN y su esposo JOSÉ C. CHRISTIAN, demandantes y apelantes, *v.* MARIANA CHRISTY GUENARD y su esposo FRANCISCO LLAVAT, demandados y apelados.

Núm. 10537.—*Sometido:* Agosto 26, 1952. *Resuelto:* Septiembre 18, 1952.

784

*A. Figueroa Rivera,* abogado de los apelantes; *A. Ramírez Silva,* abogado de los apelados.

El Juez Asociado Señor Ortiz emitió la opinión del tribunal.

En el antiguo Tribunal de Distrito de Puerto Rico, Sección de Mayagüez, los demandantes y apelantes, Esther Mariani Bartoli de Christian y su esposo José C. Christian, presentaron una demanda de daños y perjuicios contra los apelados Mariana Christy Guenard y su esposo Francisco Llavat, alegándose, en síntesis, en la demanda, que los demandantes son dueños de un solar frente a la calle Los Millonarios de Mayagüez, colindante con otro que es propiedad privativa de la demandada Mariana Christy Guenard de Llavat; que los demandados constituyen una sociedad de gananciales que explota, entre otros, un negocio de alquiler de casas y solares entre los cuales se encuentra el solar (y la casa fabricada sobre el mismo) que colinda con los demandantes; que durante la semana comprendida entre los días 12 y 18 de agosto de 1946, los demandados, en el desarrollo de su negocio de alquiler de casas y solares hicieron, por conducto de trabajadores y empleados suyos, pagados por ellos al efecto, a todo lo largo de la colindancia de ambos solares, una excavación de relativa profundidad, al hacer la cual, culpable y negligentemente, destruyeron un muro que servía de sostén a parte de la casa que habitaban los demandantes, por lo cual ésta, faltándole dicho apoyo, se hundió parcialmente el día 16 del indicado mes de agosto y que como resultado de tal hundimiento la demandante Esther Mariani de Christian, sufrió una caída y sufrió daños y perjuicios que se describen en la demanda.

Los demandados presentaron una contestación que discutiremos más adelante, y posteriormente se celebró la vista del caso en sus méritos. Al terminar de desfilar la prueba de los demandantes, los demandados presentaron una moción de *nonsuit*, [1] la que fué declarada con lugar por la corte a

[1] Bajo la Regla 41(*b*) de nuestras Reglas de Enjuiciamiento Civil, la moción de *nonsuit* se identifica como una moción de desestimación fundada en que los hechos y la ley no demuestran que el demandante tenga derecho a un remedio.

quo, dictándose la sentencia correspondiente declarando sin lugar la demanda, a base de la resolución declarando con lugar la moción de nonsuit. Contra esa sentencia han apelado los demandantes para ante este Tribunal Supremo y han señalado los siguientes errores:

1. El tribunal de distrito erró al resolver que en este caso no se probó la empresa a que se dedicaban los demandados en relación con la causa del accidente.

2. Erró, además, dicho tribunal al resolver que no se demostró la relación de agencia entre los demandados y la persona que causara el accidente, sosteniendo erróneamente que en el caso se demostró más bien que los actos invocados por los demandantes en su acción fueron ocasionados por un "contratista independiente" por cuyas actuaciones no pueden responder los demandados.

3. El tribunal de distrito cometió error al declarar con lugar el "nonsuit" planteado por los demandados y dictar sentencia declarando sin lugar la demanda.

■ Efectivamente se cometieron los errores señalados y procede la revocación de la sentencia apelada. En cuanto al primer error señalado, en su resolución declarando con lugar la moción de nonsuit, el extinto Tribunal de Distrito de Mayagüez expresó su criterio al efecto de que los demandantes no habían probado que los demandados se dedicaban a una empresa tal como lo requiere el artículo 1803 del Código Civil. Es cierto que los demandantes no presentaron prueba alguna en cuanto a que los demandados fuesen dueños o directores de un establecimiento o empresa. Sin embargo, en los párrafos tercero y quinto de la demanda se alegaba lo siguiente:

"3. Los demandados constituyen una sociedad de gananciales que explota, entre otros, bajo la administración del demandado Francisco Llavat, un negocio de alquiler de casas y solares entre los cuales se encuentran el solar (y la casa fabricada sobre el mismo) que colinda con los demandados (sic) según se deja referido en el hecho anterior . . .

"5. Durante la semana comprendida entre los días 12 y 18 de agosto de 1946, los demandados, en el desarrollo de su negocio de alquiler de casas y solares, hicieron, por conducto de trabajadores y empleados suyos, pagados por ellos al efecto, a todo lo largo de la colindancia de ambos solares antes mencionados, una excavación de relativa profundidad, etc."

En su contestación los demandados, después de interponer una primera defensa al efecto de que la demanda enmendada estaba prescrita, alegaron lo siguiente:

### "CUESTIONES DE HECHO.
#### "SEGUNDA DEFENSA.

"*Primero:* Los demandados aceptan los hechos uno, dos, tres y cuatro de la demanda.

"*Segundo:* Contestando el hecho quinto de la demanda los demandados aceptan que se realizaron ciertos trabajos en la colindancia común a la propiedad de los demandantes y los demandados alegando que al hacer dichos trabajos los mismos se realizaron con todo el cuidado necesario y por conducto de personas de experiencia; niegan además que los demandados culpable y negligentemente o en forma otra alguna destruyeran un muro que servía de sostén a parte de la casa de los demandantes y que debido a ello la referida casa de los demandantes se hundiera parcialmente el día 16 del indicado mes de agosto, alegando en contrario que en ningún momento los trabajos efectuados contribuyeron en forma o manera alguna al hundimiento parcial de la casa de los demandantes ni a hundimiento otro alguno."

En sus defensas especiales los demandados alegaron que la demanda en el presente caso interpuesta se debía a la animosidad personal de los demandantes contra los demandados con motivo de un pleito anterior; que de haber algún desnivelamiento de la casa de los demandantes ello se debió a la culpa y negligencia de los propios demandantes al tener su propiedad abandonada y en malas condiciones; que de haber ocurrido el desnivelamiento alegado el mismo fué puramente casual, fortuito e imprevisto, y no fué debido a negligencia alguna de los demandados por sí ni por conducto de terceras

personas y "que los demandados en la realización de los trabajos efectuados en su propiedad obtuvieron los servicios de obreros diestros y personas capacitadas tomando en cuenta su experiencia, conocimientos y habilidades."

Es evidente que los demandados aceptaron y admitieron expresamente los hechos alegados en el párrafo tercero de la demanda en donde se alega específicamente que los demandados constituyen una sociedad de gananciales que explota un negocio de alquiler de casas y solares. Al negar el párrafo quinto de la demanda, los demandados negaron varios hechos expuestos en ese párrafo pero no negaron lo alegado en el párrafo quinto al efecto de que la excavación fué hecha en el desarrollo del negocio de los demandados de alquiler de de casas y solares. Tampoco interpusieron defensa especial alguna al efecto de que ellos no se dedicaban a negocio alguno de alquiler de casas y solares. Habiéndose admitido en la contestación, que los demandados, por aceptación expresa en cuanto al párrafo tercero y por falta de negación en cuanto al párrafo quinto, explotaban un negocio de alquiler de casas y solares y que el accidente ocurrió en el desarrollo de ese negocio, esos hechos quedaron establecidos en virtud de las admisiones de los demandados contenidas en su contestación y los demandantes no tenían que presentar prueba sobre tales extremos.

Las Reglas 8($b$) y ($d$) de nuestras Reglas de Enjuiciamiento Civil disponen lo siguiente:

"Regla 8($b$).—La parte expondrá en lenguaje usual y conciso sus defensas contra cada reclamación interpuesta y admitirá o negará los hechos en que descanse la parte contraria.

"Regla 8($d$).—Los hechos expuestos en cualquier alegación que requiera una alegación responsiva y que no se refieran al montante de los daños se tendrán por admitidos si no se negaren en la alegación responsiva".

Las admisiones del demandado en su contestación relevan al demandante de tener que probar los hechos así admitidos. *Abella* v. *Piñero, Gobernador*, 66 D.P.R. 690, 693; *Cayere* v.

*Buxó*, 62 D.P.R. 910. El demandante no tiene que presentar prueba sobre hechos no negados o admitidos en la contestación, y esos hechos deben ser considerados como ciertos. 71 C.J.S. 333; *Torres* v. *Sociedad Tranvía de Mayagüez*, 18 D.P.R. 251; *Santini Fertilizer Co.* v. *Burgos*, 34 D.P.R. 869; *García* v. *Torres et al.*, 20 D.P.R. 169. El criterio legal es el mismo bajo las Reglas de Enjuiciamiento Civil. 2 Moore's *Federal Practice*, pág. 1700, sec. 8.29, 2da. ed.

██ Una moción de nonsuit no puede ser declarada con lugar a base de la omisión de un demandante de ofrecer prueba en cuanto a alegaciones contenidas en la demanda que han sido admitidas por la parte demandada en su contestación, ya sea por una aceptación expresa o por falta de negación. *Goldwater* v. *Oltman*, 210 Cal. 408, 292 Pac. 624; 71 A.L.R. 871; *Jackson City Bank & Trust Co.* v. *Sternburg*, 274 N.W. 806, 112 A.L.R. 1195; 53 Am. Jur. 262, sec. 323. En una moción de nonsuit puede considerarse la contestación a los fines de comprobar cuáles son las cuestiones litigiosas. *Villarán* v. *Loíza Sugar Co.*, 43 D.P.R. 604, 612.

Este Tribunal Supremo ha establecido que los casos deben ser resueltos en sus méritos y no por sutilezas legales de alegaciones y procedimientos y que ningún litigante tiene intereses adquiridos en los errores gramaticales y de procedimiento incurridos por su adversario. *Serra* v. *Autoridad de Transporte*, 68 D.P.R. 626. De otro lado, ese liberalismo no debe llegar al punto de penalizar a un reclamante por no presentar prueba en cuanto a hechos que ya han sido admitidos en las alegaciones por su contrincante.

██ Habiéndose establecido el hecho, en virtud de las admisiones de los demandados, de que los demandados se dedicaban a un negocio de alquiler de casas y solares y que el alegado acto torticero ocurrió en este caso como un incidente de ese negocio, surge la consecuencia de que los demandados se dedicaban a una empresa dentro de los términos del artículo 1803 del Código Civil. Un negocio de alquiler de solares y casas debe ser considerado como una empresa.

Véanse por analogía, los casos de *Morales* v. *Caraballo*, 27 D.P.R. 591; *Aponte* v. *Palacios*, 55 D.P.R. 697; *Acha* v. *Nevares*, 59 D.P.R. 235, 241–42; *Vázquez* v. *González*, 61 D.P.R. 277; *Carrasquillo* v. *Am. Missionary Association*, 61 D.P.R. 867; *Torres* v. *Perea*, 66 D.P.R. 171; y *Vélez* v. *Llavina*, 18 D.P.R. 656, 659. En todos estos casos se llegó a la conclusión de que estaba envuelta una empresa, a base de que la entidad o la persona se dedica habitualmente o por lucro a un negocio.

■ La base fundamental de la resolución del tribunal inferior declarando con lugar la moción de nonsuit fué su conclusión al efecto de que de la propia prueba de los demandantes surgió y se estableció el hecho de que el alegado causante inmediato de los daños, o sea, la persona que se alega que hizo la excavación que produjo el hundimiento parcial de la casa de los demandantes, no era agente o empleado de los demandados, sino que más bien era agente o empleado de un contratista independiente ("independent contractor") de nombre Andrés Barrios. En términos generales, si el obrero que se alega causa el daño es un agente o empleado de un contratista independiente y no del supuesto patrono, este último no sería responsable. *Natal* v. *Bartolomey et al.*, 14 D.P.R. 486; *Colomé* v. *Guánica Centrale*, 16 D.P.R. 466; 27 Am. Jur. 504. Examinemos la cuestión.

■ En primer término los demandados admitieron y aceptaron en su contestación que el trabajador o los trabajadores que se alega causaron el daño mediante la excavación descrita en la demanda eran agentes o empleados de los demandados. En el párrafo quinto de la demanda se alega, como ya hemos visto, que "los demandados, en el desarrollo de su negocio de alquiler de casas y solares, hicieron, por conducto de trabajadores y empleados suyos, pagados por ellos al efecto, a todo lo largo de la colindancia de ambos solares antes mencionados, una excavación de relativa profundidad, al hacer la cual, culpable y negligentemente destruyeron sin necesidad alguna un muro que servía de sostén a parte de la

casa de los demandantes por lo cual ésta, faltándole dicho apoyo, se hundió parcialmente el día 16 del indicado mes de agosto."

En su contestación, y repitiendo ahora lo anteriormente expuesto, los demandados exponen que "contestando el hecho quinto de la demanda los demandados aceptan que se realizaron ciertos trabajos en la colindancia común a la propiedad de los demandantes y los demandados, alegando que al hacer dichos trabajos los mismos se realizaron con todo el cuidado necesario y por conducto de personas de experiencia; niegan además que los demandados, culpable y negligentemente o en forma otra alguna, destruyeron un muro que servía de sostén a parte de la casa de los demandantes y que debido a ello la referida casa de los demandantes se hundiera parcialmente el día 16 del indicado mes de agosto, alegando en contrario que en ningún momento los trabajos efectuados contribuyeron en forma o manera alguna al hundimiento parcial de la casa de los demandantes ni a hundimiento otro alguno".

Es claro que los demandos no negaron la alegación contenida en la demanda al efecto de que la supuesta excavación se hizo por conducto de trabajadores y empleados de los demandados pagados por ellos al efecto. Alegaron los demandados por el contrario, que esos trabajadores habían actuado con el debido cuidado y eran personas de experiencia. Como hemos visto la omisión de negar un hecho alegado en la demanda implica la admisión de la veracidad de ese hecho y releva al demandante de la necesidad de presentar prueba sobre tal extremo.

Encontramos la misma situación al examinar las alegaciones de las partes en torno al párrafo noveno de la demanda. En dicho párrafo noveno los demandantes alegaron lo siguiente: "Tanto el hundimiento parcial de la casa de los demandantes a que se ha hecho referencia como las consecuencias directas que del mismo se han expuesto en el párrafo anterior, ocurrieron con motivo de la negligencia y

culpa de quienes, como empleados y agentes de los demandados bajo paga y en función de su empleo, estaban encargados por éstos de hacer la excavación antes referida, en cuyo proceso dejaron, innecesaria, culposa y negligentemente, sin el debido sostén, la parte de la casa de los demandantes, que, por ello, sufrió el hundimiento antes referido".  En el párrafo sexto de la contestación se alega lo siguiente: "En contestación al hecho noveno de la demanda los demandados niegan que el alegado hundimiento parcial de la casa de los demandantes ocurriera con motivo de la negligencia y culpa de los demandados o por conducto de terceras personas, negando asimismo que al hacer los trabajos a que se ha hecho referencia anteriormente, se dejara, innecesaria, culposa y negligentemente, o en forma otra alguna, sin el debido sostén, la parte de la casa de los demandantes que sufrió el alegado hundimiento, alegando en contrario, que los trabajos realizados en ningún momento podían afectar la casa de los demandantes ni mucho menos hacer que ésta se hundiera parcialmente o sufriera desperfecto alguno".

Surge claramente de lo anterior que los demandados no negaron, y por lo tanto admitieron la alegación contenida en el párrafo noveno de la demanda, al efecto de que los encargados de hacer la excavación y que la llevaron a cabo eran empleados y agentes de los demandados bajo paga y en función de su empleo.  La admisión de los demandados al efecto de que los trabajadores que se alega hicieron la excavación eran agentes y empleados de los demandados adquiere mayor relieve por el hecho de que en la defensa especial (c) contenida en la contestación los demandados alegaron lo siguiente: "que los demandados en la realización de los trabajos efectuados en su propiedad obtuvieron los servicios de obreros diestros y personas capacitadas tomando en cuenta su experiencia, conocimientos y habilidades".

Los demandados afirmativamente exponen que los obreros que llevaron a cabo los trabajos habían sido obtenidos por los propios demandados.  Ya hemos expuesto las consecuen-

cias legales de tales admisiones contenidas en la contestación. En el caso de California, de *Hill* v. *Progress Co.*, 180 P.2d. 956, se revocó una sentencia de nonsuit dictada al terminar la prueba de la parte demandante, y se resolvió que si los demandados no habían negado adecuadamente en su contestación las alegaciones contenidas en la demanda en cuanto a que unas personas eran agentes y empleados de algunos de los demandados, entonces esa alegación de agentes o empleados debía ser considerada como cierta.

Aparentemente los demandantes siguieron el criterio de que ellos no tenían que presentar prueba sobre el hecho de si el trabajador que se alega causó el daño era empleado o agente de los demandados. En la declaración de Virgilio Quiñones como testigo de los demandantes, quien fué el trabajador que dijo haber hecho la excavación, ocurrió el siguiente incidente:

"P. ¿. . . . realizó usted alguna clase de labor allá por agosto de mil novecientos cuarenta y seis?

"R. Sí, señor.

"P. ¿Por encargo de quién? . . . Perdone. No conteste. Está aceptado por falta de negación . . . ¿Cuál fué esa labor realizada por usted?

"R. Yo estaba haciendo una zanja por una guardarraya que venía ahí al frente. Me mandaron a hacer ese trabajo".

■■ Conscientes de que la realidad de los hechos debe prevalecer sobre la formalidad de las alegaciones, reconocemos que no obstante las admisiones contenidas en una contestación si el propio demandante presenta prueba que demuestre que los hechos admitidos no son ciertos y esa prueba derrota claramente la causa de acción del demandante debe declararse con lugar la moción de nonsuit correspondiente. Empero, si hay duda en cuanto a la suficiencia o insuficiencia de la prueba presentada por la parte demandante, entonces el juzgador debe considerar las admisiones contenidas en la contestación a los fines de una moción de nonsuit ya que el demandante no estaba obligado a presentar prueba

sobre hechos ya admitidos por la parte contraria. Examinemos la prueba de los demandantes a los fines de determinar si de ella surge que el trabajador o los trabajadores que hicieron las excavaciones eran agentes o empleados de los demandados o eran más bien agentes o empleados de un contratista independiente.

El testigo Virgilio Quiñones declaró que en agosto de 1946 él hizo una zanja en la colindancia de las propiedades de ambas partes; a él lo habían mandado a hacer ese trabajo y estuvo cuatro o cinco días trabajando; hizo una zanja de 24 pulgadas de ancho y como de 12 pulgadas de profundidad; en el curso de su trabajo él llegó a un muro, al primer muro que había con corte para tirar la zanja; no había ningún otro trabajador, pero había el maestro de obras Andrés Barrios que fué el que lo mandó a él y era el que se entendía; Andrés Barrios era un maestro de obras y no era ingeniero y dirigía la labor del testigo y lo mandó a él a hacer el trabajo, aunque no estaba en aquel sitio; el hijo del demandado Frank Llavat fué al sitio dos veces y estaba allí quince minutos más o menos y se iba. Siguió diciendo el testigo posteriormente que el maestro de obras Sr. Barrios estuvo la primera vez que lo dirigió a él y después estuvo otra vez más y estuvo allí como media hora; allí no iba ninguna otra persona; el testigo tuvo que cortar dos muros para pasar la zanja; el segundo muro estaba metido en la tierra, "pegaba en la guardarraya... y pegaba con el comedor de la casa de don Pepe Christian [el demandante]"; "el zoco" que sostenía el comedor de la casa del demandante estaba encima del muro que el testigo cortó; el testigo hizo lo que el maestro de obras Andrés Barrios le mandó a hacer; Andrés Barrios lo mandó a cortar el muro.

Los demás testigos, incluyendo a los propios demandantes, declararon en cuanto a la forma o manera en que ocurrió el accidente y en cuanto a los daños sufridos por la demandante. Virgilio Quiñones fué el único que declaró sobre su relación con el maestro de obras Andrés Barrios. Al termi-

nar la prueba de la parte demandante los demandados presentaron una moción de nonsuit que fué declarada con lugar por el tribunal inferior, a base especialmente de que del testimonio de Virgilio Quiñones surgía que él había hecho el trabajo por órdenes e instrucción de Andrés Barrios, quien era un maestro de obras y que Andrés Barrios era por lo tanto, un contratista independiente ("independent contractor"), en virtud de ser un maestro de obras y que, por lo tanto, surgía de la prueba de los demandantes que Virgilio Quiñones no era un agente o empleado de los demandados, no siendo responsables los demandados.

Antes que nada determinemos las reglas que determinan y controlan la concesión de una moción de nonsuit. Una moción de nonsuit admite toda la evidencia aducida por el demandante en su parte más favorable a este último y debe ser declarada sin lugar de haber tan sólo una *scintilla* de evidencia para sostener una causa de acción y debe ser declarada sin lugar cuando esa prueba presenta un caso prima facie, siendo una moción de nonsuit análoga a una excepción previa a la evidencia ofrecida por el demandante en apoyo de las alegaciones de su demanda. *José Malgor & Cía.* v. *B. Silva, Sucrs.*, 70 D.P.R. 803; *Pagán* v. *Santiago*, 69 D.P.R. 145, 148; *Cámara* v. *Rodríguez*, 69 D.P.R. 121; *Torres* v. *Marcano*, 68 D.P.R. 880. Todas las inferencias que surjan de la prueba deben ser deducidas e interpretadas a favor del demandante y la moción de nonsuit debe ser denegada cuando las inferencias que surjan de la prueba se presten a dudas o a discusión. 53 Am. Jur., 255, 257, 258, 263; *McCormick* v. *Great Western Power Co.*, 214 Cal. 658; *Slocum* v. *New York Life Ins. Co.*, 228 U.S. 364. En *Suárez* v. *Saavedra*, 52 D.P.R. 684 se resuelve que si bien al resolver una moción de nonsuit el Juez no está impedido de hacer las inferencias que de la prueba sean razonables o propias, sin embargo, al hacerlas debe tener presente que tales mociones deben ser consideradas con cautela y considerarse únicamente en casos que sean completamente claros. En *Villanueva* v.

*Suárez*, 41 D.P.R. 40, se resuelve que a los efectos de una moción de nonsuit debe presumirse que es cierta la prueba que tiende a sostener el caso del demandante y tal prueba debe ser considerada en el sentido más favorable para él. En *González* v. *Plazuela Sugar Co.*, 42 D.P.R. 701, se resuelve que ejercita bien su discreción la corte que deniega una moción de nonsuit fundada en la deficiencia de la prueba de los demandantes cuando dicha prueba, si bien es deficiente, no lo es tanto a dar al juez fundamento bastante para poner a dichos demandantes fuera de la corte y los que propusieron la moción nada han perdido con la resolución recaída. De otro lado, si la prueba del demandante establece hechos que constituyan una defensa completa, la moción debe ser declarada con lugar. 53 Am. Jur. 263.

El tribunal inferior basó su sentencia de nonsuit en la declaración del testigo Virgilio Quiñones al efecto que Andrés Barrios fué el que lo había mandado a hacer el trabajo y que Andrés Barrios era un maestro de obras. El tribunal inferior consideró que ello era suficiente para demostrar que Andrés Barrios era un contratista independiente. Pero Andrés Barrios podía haber sido a su vez un agente o empleado de los demandados. Es cierto que los demandantes no presentaron prueba alguna en cuanto a las relaciones que pudiese haber entre Andrés Barrios y los demandados, y no establecieron por medio de la prueba que ya sea Virgilio Quiñones o Andrés Barrios fuesen agentes o empleados de los demandados. Sin embargo, ya los demandados habían admitido en su contestación que los que hicieron el trabajo de excavación eran agentes o empleados suyos y por lo tanto los demandantes no venían obligados a probar la relación antes mencionada.

Lo esencial en este caso consiste en la determinación que hizo la corte inferior al efecto de que al caracterizarse a Andrés Barrios como maestro de obras ello era suficiente, de por sí, para establecer su condición como contratista independiente. Pero, como veremos más adelante, el hecho en

sí de que una persona sea maestro de obras no implica necesariamente que él sea un contratista independiente. La condición o estado de contratista independiente conlleva una relación con otra persona que envuelve distintos factores e ingredientes. Todos esos factores e ingredientes deben aparecer claramente de la prueba de la parte demandante para que se pueda justificar una sentencia de nonsuit. Un maestro de obras puede o no puede ser un contratista independiente, de acuerdo con distintas circunstancias que pasaremos a discutir más adelante. No puede señalarse una definición específica y concreta del término "contratista independiente" y no puede establecerse una regla absoluta y fija en cuanto a la existencia de esa relación y cada caso debe ser determinado de acuerdo con sus propios hechos. 27 Am. Jur. 483; 75 A.L.R. 725, 726.

En *Atiles, Admor.* v. *Comisión Industrial*, 68 D.P.R. 115, 120, se define lo que es un contratista independiente a base de los siguientes elementos:

1. Cuando la persona que emplea a otra puede prescribir lo que se ha de hacer, pero no cómo ha de hacerse ni quién lo hará.

2. Cuando el patrono tiene el derecho y la autoridad para controlar y dirigir al contratista en la realización de su trabajo.

En *Atiles, Admor.* v. *Comisión Industrial*, 63 D.P.R. 597 y en *Tomás* v. *Comisión Industrial*, 59 D.P.R. 860, dice este Tribunal Supremo que un contratista independiente es aquél que contrate un trabajo y emplee obreros para realizarlo. En *Montaner, Admor.* v. *Comisión Industrial*, 57 D.P.R. 272, el dueño de un taller de mecánica hizo para una compañía expendedora de gasolina la reparación de un tanque. Se resuelve que él era un contratista independiente ya que, según el resultado de la prueba, él hacía el trabajo bajo su propia dirección, seleccionaba sus auxiliares y no estaba sujeto a ser dirigido por la compañía en cuanto a la forma de efectuar la reparación. Se dice que si el dueño no se reserva la facultad de determinar los medios de hacerlo, sino

que simplemente exige el resultado del trabajo, el empleo es independiente y establece la relación de dueño y contratista y no la de patrono y empleado.

El criterio más importante se refiere al control que se pueda reservar al patrono sobre el trabajo. Independientemente de si se ejercita o no, lo importante es la existencia del derecho o la autoridad para intervenir o controlar, que convertiría la otra persona en empleado y no en contratista independiente, al igual que es importante determinar si las instrucciones dadas tendrían que ser obedecidas. Ese mismo control puede ser ejercitado en distintas formas, y la relación entre las partes se podría determinar por la forma en que se ejercite ese control a la luz de las circunstancias de cada caso. Si se controlan los medios y la manera de hacer el trabajo, la persona a cargo de la labor sería un empleado y surgiría la relación de contratista independiente cuando la persona que haga el trabajo está sometida a la voluntad del patrono solamente en cuanto al resultado pero no en cuanto a los medios y manera de cumplimentarlo. La retención por el dueño del derecho de inspeccionar y supervisar es compatible con el *status* de contratista independiente. El control de los trabajadores que realizan el trabajo manual es un elemento importante, pero si el dueño se reserva el derecho para despedir a los empleados de un supuesto contratista, ello implica que este último no es independiente. Además, es importante determinar si el dueño suministra los trabajadores y el equipo para hacer el trabajo, aunque ello no es decisivo. En cuanto al pago surge la relación de contratista independiente cuando el contratista se obliga a hacer el trabajo en su totalidad a base de una suma específica, y cuando su remuneración se computa con referencia a la cantidad de trabajo realizado por él. Sin embargo, el hecho de que el pago se verifique sobre la base de cantidad de trabajo no implica de por sí que exista la relación de contratista independiente cuando el resto de la evidencia demuestra que la persona utilizada es un empleado. La identidad de la persona que

paga los empleados es una circunstancia a ser considerada, aunque no se puede ignorar la posibilidad de que una persona haga los pagos a los fines de obtener un reembolso posterior. Otro elemento importante se refiere al poder de terminar el contrato en cualquier momento ya que de existir tal poder la persona utilizada no sería un contratista independiente. También es posible que una persona sea un contratista independiente para ciertos fines y que al mismo tiempo sea un empleado de la otra persona para otros fines. y la decisión dependería en cuanto a cuál sería la situación en el momento en que se produce el daño. Todos estos principios anteriormente expuestos se establecen en 27 Am. Jur. 485-504; 75 A.L.R. 726; 20 A.L.R. 766; 19 A.L.R. 240. *Restatement of the Law of Agency,* volumen 1, sección 220.

En el caso de autos, de la prueba de los demandantes no surgen los diversos elementos que permitan al juzgador el formular una determinación en cuanto a los límites y contornos de la autonomía o independencia de Andrés Barrios. No hubo prueba en cuanto a si él estaba o no sujeto a ser dirigido o controlado por los demandados y no hubo prueba en cuanto a si los demandados se habían reservado la facultad de determinar los medios de hacer el trabajo, ni hubo prueba en cuanto a la forma en que Andrés Barrios y Virgilio Quiñones eran pagados, ni en cuanto a la persona que suministraba el equipo, ni en cuanto a si los demandados tenían la facultad de terminar cualquier posible contrato con Andrés Barrios en cualquier momento.

Ya hemos visto que a los fines de una moción de nonsuit, todas las inferencias razonables deben deducirse a favor de la parte demandante. El hecho en sí de que a una persona se le caracterice como a un maestro de obras no excluye una inferencia razonable al efecto de que él no es un contratista independiente.

La expresión "maestro de obras" de por sí y aisladamente no debe tener connotación legal definitiva. Debe siempre considerarse el contenido real de esa expresión. En *Santiago*

v. *Torres*, 60 D.P.R. 265, 269 se resuelve que un contratista de obras no es necesariamente un profesor ni un maestro dentro de la acepción que esas palabras tienen en el inciso 2, artículo 1867 de nuestro Código Civil, que se refiere a la prescripción por el transcurso de tres años de profesores y maestros. En la opinión se indica que "maestro" es, en parte, "el que es práctico en una materia y la maneja con desembarazo". También se dice lo siguiente en la opinión (pág. 270):

"El mero contratista de obras no es necesariamente un conocedor del arte de construir. Con frecuencia se dedican a ese negocio personas que cuentan con capital o crédito suficientes para acometer la empresa y que están asesoradas por personas conocedoras del trabajo a realizarse. El *profesor* o *maestro* a que se contrae el citado precepto legal es, por ejemplo, el arquitecto o ingeniero que prepara los planos y especificaciones, o el que dirige o inspecciona la obra; pero no puede referirse a un mero contratista de obras ni aun a un ingeniero o arquitecto o persona práctica en esas profesiones, que además de su trabajo profesional incluye en el contrato el coste de los materiales, mano de obra, etc. Es sabido que generalmente el valor de los servicios profesionales propiamente dichos constituye una parte relativamente pequeña del valor de la obra cuando ésta es de alguna importancia por el coste de sus materiales, mano de obra, etc."

La Corte Suprema de los Estados Unidos en el caso de *Rutherford Food Corporation* v. *McComb*, 331 U. S. 722, 729–30, al referirse a la aplicabilidad de la Ley Federal de Normas Razonables del Trabajo a ciertos empleados, dijo en parte lo siguiente:

"Cuando el trabajo realizado en su esencia es el que hace usualmente un empleado, el hecho de ponerle la marca o señal 'contratista independiente' no lo priva de su *status* de empleado . . . La determinación de la relación no depende de factores aislados sino de las circunstancias que rodean la actividad total."

El tribunal inferior citó los casos de *Natal* v. *Bartolomey et al.*, 14 D.P.R. 486 y *Colomé* v. *Guánica Centrale*, 16 D.P.R.

466, como fundamento para su resolución concediendo la moción de nonsuit. Esos casos no son aplicables directamente al de autos. En el de *Natal* v. *Bartolomey et al.*, supra, se trataba de un maestro de obras construyendo un edificio de madera, Román Natal, quien era el director y encargado del edificio en construcción. Se declaró por los testigos que el demandado nada tenía que ver con la obra aunque él algunas veces le pagaba sus jornales al demandante. No se demostró que el demandado tuviera intervención alguna en los trabajos que hacía el demandante. Hubo prueba por lo tanto en cuanto a la ausencia de control de parte del demandado. Además, la condición de Natal como supuesto empleado no fué admitida en forma alguna en la contestación tal como ocurrió en el caso de autos y no se trataba de una moción de nonsuit sino que desfiló la totalidad de la prueba ante el Juez de la Corte de Distrito do Ponce.

En *Colomé* v. *Guánica Centrale*, supra, se llegó a la conclusión de que el Sr. Santos Vigo era un contratista independiente. En la página 468 se dijo lo siguiente en la opinión:

"Un examen detenido de los hechos del caso claramente demuestra que el demandante, Rufino Colomé, era un empleado de Santos Vigo, contratista independiente, que se había comprometido a transportar ciertos sacos de la azúcar fabricada por la Guánica Centrale, de una parte de un edificio a otra, y, de nuevo, del edificio al muelle, cuando se le ordenara a hacerlo a un precio estipulado por cada mil sacos, y que él empleaba al demandante y a otros trabajadores para que transportaran los sacos cuando se les mandaba, lo que ellos hacían por un precio determinado que les pagaba el referido Vigo".

Tampoco hubo en dicho caso las admisiones en la contestación que han sido hechas en el de autos, y no se trataba de una moción de nonsuit. Además, hubo prueba de hechos concretos y detalles que determinaban la relación de contratista independiente, tal como surge del extracto de la opinión que hemos copiado.

██ Aún asumiendo que Andrés Barrios fuese un contratista independiente, la prueba de los demandantes es compatible con la responsabilidad de los demandados. A los fines de la moción de nonsuit tenemos que asumir que la prueba de los demandantes es cierta. El testigo de los demandantes, Virgilio Quiñones, trabajador encargado de la obra ya mencionada, declaró que él hizo una zanja en la línea divisoria de las propiedades pertenecientes a los demandantes y a los demandados y que para hacer la zanja él tuvo que cortar y cortó, dos muros de ladrillos con una picota, una pala y un marrón. El segundo muro que él cortó tenía un promedio de doce pulgadas de ancho y de más o menos dos pies y de alto, y ese muro estaba metido en la tierra y según el testigo "pegaba en la guardarraya de aquí y pegaba con el comedor de la casa de Don Pepe Christian [el demandante]". Dijo él también: "Entonces aquí terminaba el muro de la casa de Pepe Christian. Estaba un zoco cogido con el muro, así. Entonces el zoco estaba metido en el muro. Entonces yo corté el muro por aquí". Siguió diciendo que el muro tendría un promedio de doce a catorce pies hacia dentro de la propiedad de los demandados y de ocho a diez pies hacia la propiedad de los demandantes y que la parte que estaba dentro de la propiedad de los demandados tenía la misma medida que la parte que estaba dentro de la propiedad de los demandantes. El segundo muro que él cortó iba a terminar en el zoco del comedor de la casa de los demandantes y el zoco estaba encima del muro.

Del resto de la prueba de los demandantes surge que debido a esas actuaciones de Virgilio Quiñones se derrumbó el piso del comedor y que la demandante sufrió daños y perjuicios al ella caerse con motivo de ese derrumbe.

Ahora bien, cuando el trabajo a ser hecho por una persona implica de por sí que esa persona tiene que realizar una transgresión en la propiedad de otra persona (*trespass*), un demandado que haya enviado a esa persona a hacer ese trabajo es responsable, aunque el trabajador sea un contratista

independiente. Si el patrono ha ordenado el acto se establece su responsabilidad, aun si la persona que realizó el acto era un contratista, independiente. 27 Am. Jur. 518, sec. 40. En la monografía contenida en 21 A.L.R. 1229 se establece la doctrina general prevaleciente en prácticamente todas las cortes de los Estados Unidos continentales, cuya doctrina nosotros adoptamos y aprobamos, al efecto de que un patrono es responsable por los actos torticeros de un contratista independiente si los daños causados constituyen un resultado directo y necesario del trabajo estipulado, o sea, si el trabajo a ser realizado no puede ser hecho sin peligros o daños a terceras personas y si ese trabajo, por su propia naturaleza y existencia, necesariamente tiene que causar o producir peligros o daños. En ese caso los daños se producen, no debido a la manera en que se hace el trabajo, sino al hecho en sí de que se hace el trabajo.

La Corte Suprema de los Estados Unidos ya ha establecido un dictamen en cuanto a esta cuestión. En *Weinman* v. *De Palma*, 232 U.S. 571, 58 L. ed. 733, el dueño de una propiedad contigua a otra propiedad ordenó el que se hiciera una excavación en la línea divisoria de ambas propiedades a los fines de construir una muralla (*party wall*). Ese trabajo fué realizado por un contratista independiente, pero para llevar a cabo esa labor, era necesario hacer una excavación debajo de un edificio localizado en la propiedad contigua y perteneciente al demandante. Se derrumbó la muralla perteneciente al demandante y este último sufrió daños y perjuicios. La Corte Suprema de Estados Unidos dijo lo siguiente:

"Estamos de acuerdo con la Corte Suprema de Nuevo Méjico al efecto de que cuando el dueño de una propiedad hace un contrato para la construcción de una muralla (*party wall*), cuyo contrato no puede ser completado de acuerdo con sus términos sin penetrar en la propiedad contigua y sin excavar debajo de un edificio perteneciente al dueño de la propiedad contigua, y en cumplimiento de ese contrato los trabajadores entran (*trespass*) en la propiedad adyacente y hacen tal excavación, el con-

trato es evidencia de una orden o aprobación de la transgresión por él (demandado) y el demandado es responsable por los daños y perjuicios así producidos. Cuando una transgresión resulta en la destrucción de un edificio (deben pagarse los daños correspondientes)".

Naturalmente si el contrato no implica la necesidad de que se realice una transgresión (*trespass*) el patrono no es responsable necesariamente por transgresiones hechas por el trabajador y no autorizadas por el patrono. 21 A.L.R. 1268 *et seq.* Si los demandados en el caso de autos habían autorizado o no a Andrés Barrios y a Virgilio Quiñones a realizar una transgresión y si, por su propia naturaleza la excavación hecha en este caso implicaba necesariamente una excavación dentro de la propiedad de los demandantes, o implicaba necesariamente el cortar un muro que le servía de sostén a la casa de los demandantes dentro de su propiedad, son cuestiones a ser resueltas al considerar la totalidad de la prueba presentada por ambas partes. Empero, de la prueba de los demandantes surge la inferencia razonable de que la excavación hecha requería de por sí el que Virgilio Quiñones realizase los actos ya mencionados dentro de la propiedad de los demandados. Esa inferencia puede ser derrotada o rebatida por la totalidad de la prueba presentada en este caso, pero lo declarado por Virgilio Quiñones implica que la moción de nonsuit debió haber sido declarada sin lugar. Véase, además, 27 Am. Jur. 523, sección 45, y los casos allí citados al efecto de que si una excavación conlleva el resultado necesario de que el sostén de un edificio perteneciente al dueño de una propiedad contigua tenga que derrumbarse, el demandado no puede escapar responsabilidad por el hecho de haber utilizado a un contratista independiente, y, al mismo efecto, véase la Anotación en 23 A.L.R. 1033 *et seq.*

*Debe revocarse la sentencia apelada y devolverse el caso al Tribunal Superior, Sala de Mayagüez, para que se sigan los procedimientos posteriores que no sean incompatibles con esta opinión.*