596 

MARÍA ANTONIA MARTÍNEZ por sí y en representación de su menor hijo RICHARD JUAN RAMÍREZ MARTÍNEZ ET AL., demandantes, apelados y apelantes, *v.* UNITED STATES CASUALTY CO. y MUNICIPIO DE AÑASCO, P. R., demandados, apelantes y apelados.

Número 11630.

*Sometido:* 12 de junio de 1956. *Resuelto:* 9 de agosto de 1956.

*Emilio de Aldrey* y *Luis Alfredo Colón,* abogados de los demandados, apelantes y apelados; *Víctor M. Brignoni,* abogado de los demandados, apelados y apelantes.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

María Antonia Martínez y Mercedes Guzmán presentaron demanda de daños y perjuicios contra la United States Casualty Co. y el Municipio de Añasco, la primera en representación de su hijo legítimo Richard Juan Ramírez Martínez, y la segunda de sus hijas naturales reconocidas Elizabeth

y Edna Virginia Ramírez Guzmán.(¹) Alegaron en ella, esencialmente, que el día 31 de agosto de 1950 y en la calle principal del pueblo de Añasco, en ocasión en que José Rodríguez Lamberty conducía la ambulancia municipal de dicho pueblo a velocidad exagerada, en forma atolondrada y sin tomar las debidas precauciones, chocó la misma con un posté del teléfono y lanzó a Juan Ramírez Caraballo al pavimento, recibiendo éste heridas a consecuencia de las cuales murió; y que la muerte de Ramírez Caraballo se debió única y exclusivamente a la negligencia del chófer Rodríguez Lamberty, quien conducía el referido vehículo en su carácter de empleado del aludido municipio.

En su contestación los demandantes admitieron la ocurrencia del accidente. Alegaron, sin embargo, que en el mismo no hubo culpa o negligencia de parte del chófer y que aquél se debió a que los frenos del vehículo le fallaron al entrar a una curva, sin que el conductor pudiera detener el mismo "y al perder por este motivo el control del volante sobrevino el choque." Admitieron además el resto del apartado correspondiente.(²) También sostuvieron como defensas especiales que la ambulancia en cuestión debía destinarse a transportar pacientes del hospital de Añasco, y no a la transportación de pasajeros; que el occiso abordó el vehículo sin autorización expresa ni implícita de su conductor ni de ningún funcionario autorizado del municipio de Añasco; que en los momentos del accidente el vehículo no se dedicaba a funciones propias de ambulancias municipales; que por el contrario la persona que conducía la misma la utilizaba en funciones ajenas enteramente al uso propio y adecuado para

(¹) Originalmente las demandantes comparecieron además por sí, mas su demanda fué desestimada por figurar únicamente la aseguradora como demandada. Como al dictarse la resolución desestimatoria ya había prescrito su causa de acción contra el municipio, el pleito se siguió exclusivamente para beneficio de los menores.

(²) En el resto del apartado correspondiente de la demanda se alega que el conductor de la ambulancia chocó la misma con un poste del teléfono y que como consecuencia de ese choque Juan Ramírez Caraballo fué lanzado al pavimento recibiendo heridas que fueron la causa de su muerte.

el cual se destina una ambulancia, sin que para ello fuera autorizada por funcionario alguno ni del hospital ni del municipio; que el chófer de esa ambulancia no tenía autoridad para transportar invitados en la misma y que si lo hizo fué por su cuenta y riesgo.

Fué el pleito a juicio, ofreciendo las partes prueba testifical y documental en apoyo de sus respectivas pretensiones. El tribunal a quo dictó sentencia declarando con lugar la demanda, condenando a los demandados a pagar a las demandantes la suma total de $15,000, más las costas y $300 para honorarios de abogado, pero limitando la responsabilidad de la aseguradora a la suma de $5,000, monto máximo del seguro expedido. En apoyo de esa sentencia emitió una opinión de la cual copiamos las siguientes conclusiones de hechos probados:

"1. El día 30 de agosto de 1950 murió el individuo Juan Ramírez Caraballo, también conocido como Juan Caraballo, a consecuencia de golpes recibidos en un accidente sufrido por la ambulancia propiedad del Municipio de Añasco a que se refieren las alegaciones de la demanda.

"2. El accidente ocurrió debido a que dicha ambulancia corría cerca de la media noche por las calles del pueblo de Añasco a mayor velocidad, con los frenos defectuosos, habiéndole fallado los frenos al vehículo en los momentos de entrar el mismo a una curva, yendo éste a chocar contra un poste de la luz, el cual partió, y habiéndose luego volcado la ambulancia como consecuencia de dicho impacto. —De acuerdo con los testigos del demandante el cadáver del interfecto apareció tirado en el medio de la carretera, 3 ó 4 pies más allá del poste partido, habiéndose volcado la ambulancia como a 60 pies más hacia el frente.—

"3. En los momentos del accidente el vehículo era guiado por un bombero insular de nombre José Rodríguez Lamberty, a quien el Alcalde de dicho Municipio le había encomendado que guiara la ambulancia para llevar a una señora enferma al Hospital Municipal pocos momentos antes. Rodríguez Lamberty había llevado a la enferma al Hospital Municipal en dicha ambulancia, y en los momentos del accidente, llevaba al esposo de la enferma a buscar unas medicinas a una de las farmacias del pueblo.

"4. El Sr. Alcides Figueroa, Alcalde de Añasco, estaba autorizado por el Jefe del Servicio Insular de Bomberos para utili-

zar a Rodríguez Lamberty, quien era el chófer regular de la bomba de incendios, para guiar la ambulancia del municipio en casos de emergencia. En ocasiones anteriores el Alcalde había utilizado los servicios de esta persona para conducir la ambulancia municipal, y la noche del accidente, el Alcalde solicitó los servicios de Juan Rodríguez Lamberty por ser un caso de emergencia y porque no tenía disponible ninguno de los chóferes regulares de la ambulancia, quienes eran empleados municipales.

"5. Los menores demandantes Richard Juan Ramírez Martínez, Elizabeth Caraballo Guzmán y Edna Virginia Caraballo Guzmán, son hijos del interfecto Juan Ramírez Caraballo, de quien dependían exclusivamente para sus subsistencia. Richard Juan Ramírez Martínez, tiene en la actualidad 16 años de edad, teniendo las otras dos menores demandantes 7 y 8 años de edad respectivamente en el presente. Para la fecha de su muerte Juan Ramírez Caraballo era un hombre saludable y robusto, de 37 años de edad, quien ganaba lo suficiente para atender todas las necesidades de sus hijos menores."

De la sentencia así dictada apelaron ambas partes. Procederemos en primer lugar a discutir los errores señalados por los demandados. Éstos son al efecto de que el tribunal a quo erró (1) al resolver que la ambulancia propiedad del Municipio de Añasco iba conducida en los momentos del accidente por un empleado o agente del Municipio o en funciones como tal o incidentales a la gestión que anteriormente se le había encomendado; (2) al resolver que la ambulancia...arrolló a Juan Ramírez Caraballo, cuando de la prueba ofrecida por los demandantes no surge la forma en que ocurrió dicho accidente; (3) al no resolver que Juan Ramírez Caraballo era o un intruso en la ambulancia o un invitado del chófer, ya bien en forma expresa o implícita y que por tanto sus familiares no tenían derecho a obtener compensación por su muerte; (4) al resolver que aun cuando no hubiera base para concluir que el conductor de la ambulancia en los momentos del accidente era un agente del Municipio de Añasco, aún así el Municipio es responsable directamente por surgir de las admisiones de la contestación de los demandados que el accidente se debió al hecho de que los frenos de este vehículo le fallaron; (5) al resolver que aun cuando no se con-

siderara al conductor de la ambulancia un agente del Municipio de Añasco, en los momentos del accidente, la compañía aseguradora siempre sería responsable ya que de acuerdo con la póliza la definición de asegurado se extiende a cualquier persona que use el automóvil con permiso del asegurado; y (6) al resolver que la póliza expedida por la codemandada U. S. Casualty Co. a favor del Municipio de Añasco cubría el accidente a que se refiere este caso.

▮ Los errores así señalados no han sido cometidos. Respecto al primero de ellos bastará citar aquí lo dicho por nosotros en *González* v. *Cía. Agrícola,* 76 D.P.R. 398, 401, a saber:

"Lo esencial, a los fines de investigar si cierta actuación se ha realizado dentro de los límites del mandato, es determinar si, al llevarse a cabo tal actuación, o al ocurrir el accidente, el agente tenía el propósito de servir y proteger los intereses de su patrono, y no con la intención de servir los propios propósitos del agente y *si la actuación es incidental al cumplimiento de las actuaciones autorizadas, esto es, si existe una conexión razonable y pertinente entre el acto del agente y los intereses del patrono y si el acto del agente tiende razonablemente a imprimirle efectividad al objetivo final del patrono...*" (Bastardillas nuestras.)

Cierto es que según la prueba que figura en autos el chófer solamente fué autorizado por el alcalde para trasladar la enferma de su casa al hospital, pero no puede decirse que al trasladar al esposo de la enferma a la farmacia en busca de la medicina que a aquélla le habían recetado él tuviera el propósito de servir sus propios intereses y no los intereses del municipio. Además, existía una conexión razonable y pertinente entre el acto realizado por el chófer y los intereses del municipio, tendiendo tal acto razonablemente a imprimirle efectividad al objetivo principal del municipio como lo es, entre otros, el prestar el mejor servicio de beneficencia pública a la comunidad.

De la prueba que figura en autos se desprende que entre once y doce de la noche del 31 de agosto de 1950 un indivi-

duo que es identificado en los autos como el hijo de Aniceto Rodríguez, tocó a la puerta de la casa de Alcides Figueroa, alcalde de Añasco, y le pidió que le facilitara la ambulancia para trasladar a su esposa, que se hallaba enferma, al hospital municipal; que el alcalde le contestó que el chófer de la ambulancia acababa de llegar con él de un viaje, pero que fuera al parque de bombas y le dijera a Rodríguez Lamberty que hiciera el traslado de la enferma en la ambulancia; que Rodríguez Lamberty así lo hizo, llevando la enferma al hospital, donde se le recetó cierta medicina de que allí carecían; que entonces el esposo de la enferma le pidió a Rodríguez Lamberty que lo llevara a la farmacia para comprar dicha medicina, a lo cual Rodríguez Lamberty accedió, surgiendo el accidente mientras se dirigían a la farmacia. ([3]) Respecto a la forma precisa en que murió Juan Ramírez Caraballo no hay evidencia directa de clase alguna en los autos. Sólo sabemos por éstos que la ambulancia corría a velocidad excesiva, y que al tomar una curva chocó con un poste, que partió en dos, y luego se volcó, y que Ramírez Caraballo apareció muerto allí cerca. Dado el cúmulo de prueba que tuvo ante sí el tribunal a quo pudo correctamente concluir, como lo hizo, que el accidente se debió exclusivamente a la culpa y negligencia de Rodríguez Lamberty, sin que mediara en modo alguno negligencia contribuyente de parte de Ramírez Caraballo. El hecho de que en la demanda se alegaran actos específicos de negligencia, no era óbice para que se aplicara la doctrina de *res ipsa loquitur*. En *Román* v. *Mueblería Central*, 72 D.P.R. 341, 343, dijimos que: "...es considerable el número de jurisdicciones que sostienen que cuando las circunstancias del caso son de tal naturaleza que el accidente no hubiera ocurrido a no haber sido por la ex-

---

([3]) No sabemos por qué razón Rodríguez Lamberty no fué utilizado como testigo por ninguna de las partes. El esposo de la enferma (hijo de Aniceto Rodríguez) tampoco fué llamado a declarar, posiblemente por encontrarse en Nueva York para la fecha del juicio. Las declaraciones de ellos hubieran indudablemente arrojado mucha luz sobre la forma exacta en que ocurrió el accidente.

clusiva negligencia del demandado y el demandante no tiene medios a su alcance para probar la causa del accidente, la doctrina (de *res ipsa loquitur*) debe aplicarse a pesar de haberse alegado hechos específicos de negligencia, que el demandante intentó, pero no pudo probar." Manifestamos, además, a la pág. 345 que: "Mientras el demandado no demuestre que no fué por su negligencia que ocurrió el accidente, debe prevalecer en contra suya la presunción de negligencia que conlleva dicha doctrina." Véanse también *Hermida* v. *Feliciano*, 62 D.P.R. 55, y *Cintrón* v. *A. Roig, Sucrs.*, 74 D.P.R. 1028, 1039. *Cf. Kirchberger* v. *Gover*, 76 D.P.R. 907.

■■ La jurisprudencia se expresa en el sentido de que si el chófer de un vehículo sin autorización de su patrono invita a otra persona a que le acompañe y como consecuencia de un accidente sufrido por el vehículo el invitado es lesionado, el dueño no es responsable. *Rivera* v. *Maldonado*, 72 D.P.R. 479. Blashfield's, *Cyclopedia of Automobile Law and Practice*, vol. 5, ed. permanente, sec. 3016, pág. 311. En el caso de autos no hubo la menor prueba al efecto de que el occiso fuera un invitado, un intruso o un transgresor. De suerte, pues, que la doctrina que acabamos de exponer no tiene aplicación aquí. También es doctrina en derecho que una vez que existe prueba de que el demandado es dueño del vehículo que causó los daños, surge la presunción *juris tantum* de que la persona que conducía tal vehículo era empleado o agente del demandado y que éste actuaba en el curso del desempeño de sus atribuciones. *Pereira* v. *Commercial Transport Co.*, 70 D.P.R. 641, 645. Semejante presunción no fué destruída en este caso. *Cf. Acosta* v. *Crespo*, 70 D.P.R. 239. Así pues, adversamente al cuarto señalamiento de los demandados, tenemos en primer lugar ese principio jurisprudencial, y en segundo lugar las propias admisiones de los demandados en su contestación, que hemos hecho constar al principio de esta opinión.

■ En el párrafo tercero de la póliza de seguros expedida por la codemandada U. S. Casualty Co. a favor del Mu-

nicipio de Añasco se hace constar claramente (en el idioma inglés) que la palabra "asegurado" incluye al asegurado y a cualquier persona que use el automóvil...con permiso de aquél. Por otro lado, nada hay en la póliza que demuestre que el vehículo asegurado tuviera que usarse exclusivamente como ambulancia. Pero aún si tal demostración existiera, el uso descrito en la póliza "debe ser el uso regular y dominante que debe dársele al vehículo, pero ello no quiere decir que ése sea el único uso que se le puede dar al mismo y que de ocurrir un accidente mientras se le está dando otro uso ello (no) es óbice para recobrar bajo la póliza." *Quiñones v. Tropical Beverages*, 74 D.P.R. 364, 374. El quinto error señalado, por tanto, tampoco fué cometido. Respecto al sexto sólo es menester repetir lo antes expuesto.

■■ El único error señalado por los demandantes es que el tribunal a quo erró al fijar la cuantía de la indemnización en la suma de $15,000. Según la prueba ofrecida, el interfecto era un hombre de 37 años de edad, sano y fuerte, quien durante la zafra se dedicaba a cargar sacos de azúcar y ganaba $4.80 diarios, y en tiempo muerto trabajaba como ayudante de carpintero y se ganaba unos $2.50 al día. La fijación de la indemnización descansa en el sano criterio del tribunal sentenciador y con la cuantía por éste concedida no intervenimos a no ser que se nos demuestre un claro abuso de discreción. Consideradas las circunstancias concurrentes, creemos que no ha habido tal abuso y que la suma total de $15,000 (⁴) concedida es suficiente.

*No habiéndose cometido ninguno de los errores señalados por una y otra parte, la sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. Belaval está conforme con el resultado.

El Juez Asociado Sr. Pérez Pimentel no intervino.

---

(⁴) El tribunal a quo condenó a los demandados a pagar al demandante Richard Juan Ramírez Martínez la suma de $5,000 y a las demandantes Elizabeth y Edna Virginia Ramírez Guzmán la suma de $10,000.