# 2009 DTA 133

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VII**

ÁNGEL M. APONTE APONTE, ISOLINA APONTE MALDONADO,
EFRAÍN APONTE APONTE, MARYLIN APONTE APONTE
Demandantes-Apelados

v.

CARLOS ENRIQUE ORTIZ ROSADO, SU ESPOSA NOEMI SANTOS GARCÍA, SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA, ÁNGEL ORTIZ ROSADO
Demandados-Apelantes

Núm. KLAN-2008-00951

San Juan, Puerto Rico, a 21 de septiembre de 2009

Panel integrado por su Presidente, el Juez Rivera Román,
y los Jueces Coll Martí y Vizcarrondo Irizarry

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El señor Carlos Enrique Ortiz Rosado (Carlos Ortiz), la señora Noemí Santos García y la sociedad legal de gananciales compuesta por ambos presentaron un escrito de apelación mediante el cual nos solicitan la revocación de una sentencia emitida por el Tribunal de Primera Instancia. En la sentencia, el tribunal declaró con lugar la demanda en daños y perjuicios instada por el señor Ángel Aponte Aponte e impuso contra los codemandados Ángel Ortiz Rosado y Carlos Ortiz, el pago solidario de $78,000 por concepto de daños físicos sufridos.

Por entender que el Tribunal de Primera Instancia actuó correctamente, se confirma la sentencia.

### I

Como consecuencia de un accidente de tránsito, el señor Aponte fue arrollado por un vehículo conducido por

el señor Ángel Ortiz. Los hechos ocurrieron en el kilómetro 2.1 de la Carretera 719 del Barrio Helechal de Barranquitas, a eso de las 10:00 de la noche. En el lugar del accidente, la carretera era recta y tenía dos carriles para permitir el tránsito en ambas direcciones.

Al momento de ocurrir el accidente, el señor Aponte cruzaba la carretera. El señor Ángel Ortiz declaró que desconocía si había impactado a un animal o a una persona, pero no se detuvo en el lugar del accidente a pesar de que el cristal delantero en el lado del pasajero se rompió como consecuencia del impacto. El señor Ángel Ortiz indicó que al momento del accidente las luces del vehículo que utilizaba estaban en buenas condiciones. Por este accidente, el señor Ángel Ortiz se declaró culpable de conducir negligentemente bajo las disposiciones de la Ley de Tránsito de Puerto Rico [1] y durante la vista del pleito civil reiteró su negligencia por el referido accidente.

El día de los hechos, previo al accidente de tránsito, el señor Ángel Ortiz había recogido el vehículo como parte de un trámite de reposesión y actuaba por encomienda de su hermano, el señor Carlos Ortiz, de quien recibía instrucciones sobre la transportación y entrega del vehículo. El señor Carlos Ortiz tenía conocimiento de las gestiones que realizaba su hermano Ángel e, inclusive, le había dejado la grúa de su propiedad y los papeles del Banco relacionados con el vehículo reposeído en la casa de la madre de ambos. Luego de ocurrido el accidente, fue el señor Ángel Ortiz quién recibió nuevamente el vehículo y lo condujo en la grúa del señor Carlos Ortiz hasta el lote del Banco donde lo debía depositar. El señor Carlos Ortiz le pagaba a su hermano, el señor Ángel Ortiz, por las gestiones que realizaba de recogido, traslado y entrega de vehículos.

El señor Aponte presentó la demanda en daños y perjuicios y reclamó los daños sufridos como consecuencia del accidente de tránsito. Luego de varios trámites procesales, [2] el tribunal resolvió continuar el caso contra los codemandados, hermanos Ángel y Carlos Ortiz. En la vista en su fondo se presentó, como único testigo, al señor Ángel Ortiz, quien, al momento de celebrar la vista, tenía anotada la rebeldía por no contestar la demanda.

El demandante señor Aponte y los codemandados Carlos Ortiz y otros sometieron ante la consideración del tribunal una estipulación de sus respectivos informes médicos. De éstos y otros documentos, el tribunal realizó sus determinaciones de hechos adicionales.

Conforme al informe del Dr. Llompart, perito del codemandado, el señor Aponte sufrió las siguientes lesiones: impedimento físico de 4% en la extremidad superior derecha, impedimento físico de 4% en el tobillo izquierdo, impedimento físico de un 4% en la rodilla izquierda. El Dr. Llompart le otorgó al demandante un impedimento general de 17%. Por su parte, el Dr. Juan M. Crespo describió las lesiones sufridas por el demandante como: fractura 1/3 distal en húmero derecho, fractura del Plateau tibial izquierdo, fractura de fíbula izquierda, lesión del nervio radial y ulnar derecho y heridas en la barbilla, cabeza, y abdomen. El señor Aponte también recibió tratamiento quirúrgico de: reducción abierta y fijación interna del maleolo derecho, aplicación de yeso corto en la pierna derecha, aplicación de yeso largo en la pierna izquierda y reducción cerrada e inmovilización con cabestrillo en el brazo derecho.

El Tribunal de Primera Instancia determinó que el señor Ángel Ortiz admitió su negligencia, de acuerdo con las declaraciones realizadas en la vista en su fondo. También concluyó que entre el señor Ángel Ortiz y su hermano Carlos Ortiz existía una relación de empleado y no de contratista. El Tribunal de Primera Instancia emitió una sentencia en la cual declaró *ha lugar* la demanda en daños y perjuicios contra los señores Ángel y Carlos Ortiz y les ordenó pagar, de forma solidaria, $68,000 por la incapacidad del señor Aponte en sus funciones generales y $10,000 por la cirugía abierta, sumando un total de $78,000. El Tribunal no concedió daños por terapias debido a que no se especificó cuántas recibió el accidentado y tampoco concedió daños por sufrimientos o angustias mentales porque el señor Aponte no testificó.

Inconforme con la decisión, el señor Carlos Ortiz presentó un recurso de apelación en el cual alegó que erró el Tribunal de Primera Instancia al no realizar una determinación de negligencia comparada con un porcentaje de responsabilidad atribuido al demandante y al determinar que la relación entre los codemandados, Ángel y Carlos Ortiz, era una de empleo y no de contratista.

## II

Examinemos algunos principios de ley aplicables al caso.

### 1. La obligación de responder por daños causados por un empleado.

En nuestro ordenamiento civilista, la obligación de reparar los daños causados mediando culpa o negligencia emana del Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141. En reiteradas ocasiones, el Tribunal Supremo ha interpretado que para que surja la obligación establecida en el citado precepto es necesario que concurran los siguientes elementos: (a) la ocurrencia de un daño, (b) una acción u omisión culposa o negligente, (c) la relación causal entre el daño y la conducta culposa o negligente. *Hernández Vélez v. Televicentro*, **2006 J.T.S. 151**, 168 D.P.R. ___ (2006); *Toro Aponte v. E.L.A.*, 142 D.P.R. 464, 473 (1997); *Ramírez v. E.L.A.*, 140 D.P.R. 385, 391 (1996).

De ordinario, la obligación de reparar daños nace de un acto u omisión propia. Sin embargo, puede haber responsabilidad personal por daños en casos particulares específicamente dispuestos por ley. Así pues, el Artículo 1803, 31 L.P.R.A. sec. 5142, impone obligación por los actos u omisiones de las personas por quien se debe responder. En lo pertinente a la controversia que nos ocupa, el Artículo 1803, *supra*, dispone que serán responsables:

"[L]os dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones."

El Tribunal Supremo ha resuelto que el criterio determinante para establecer la responsabilidad del patrono por los perjuicios causados por sus empleados es si al llevar a cabo la actuación, el empleado tenía el propósito de servir y proteger los intereses de su patrono. *Hernández Vélez v. Televicentro, supra*; *Martínez v. U.S. Casualty Co.*, 79 D.P.R. 596, 601 (1956), citando a *González v. Compañía Agrícola*, 76 D.P.R. 398, 401 (1954). Esto se refiere a "si existe una conexión razonable y pertinente entre el acto del agente y los intereses del patrono y si el acto del agente tiende razonablemente a imprimirle efectividad al objetivo final del patrono". *Hernández v. Televicentro; Martínez v. United States Casualty Co.*, 79 D.P.R. 596, 601 (1956); *González v. Compañía Agrícola de Puerto Rico*, 76 D.P.R. 398, 401 (1954). Por lo que la actuación del empleado que genera responsabilidad al patrono es aquélla que tiene alguna relación con la gestión encomendada y que redunda en beneficio para éste. *Hernández v. Televicentro, supra*; *Sánchez Soto v. E.L.A.*, 128 D.P.R. 497, 502, (1991).

El Tribunal Supremo ha señalado como regla prevaleciente que:

"[E]l patrono es responsable por los actos temerarios, voluntarios, intencionales, desenfrenados o maliciosos de su empleado, así como por sus actos imprudentes y descuidados si son realizados mientras el empleado actúa en el ejercicio de su autoridad y en el curso de su empleo o con miras al adelantamiento del negocio del patrono y no con un propósito personal suyo." *Hernández v. Televicentro, supra*, citando a *Maysonet v. Sucn. Arcelay*, 70 D.P.R. 167, 173 (1949).

Sobre la responsabilidad del patrono ante una conducta delictiva de su empleado, el Tribunal Supremo ha resuelto que existe responsabilidad conforme al Artículo 1803, *supra*, siempre que el acto delictivo se lleve a cabo como un incidente de la protección de los intereses del patrono y no en protección de los intereses

personales del agente. *Hernández Vélez v. Televicentro, supra; Rodríguez v. Pueblo*, 75 D.P.R. 401, 409-410 (1953); *Maysonet v. Sucn. Arcelay, supra*, pág. 173. Al realizar esta determinación, los tribunales deberán analizar si la actuación de que se trata es una consecuencia relevante del ejercicio de las funciones del mandatario. *Hernández Vélez v. Televicentro, supra;.Rodríguez v. Pueblo, supra*, pág. 410.

## 2. La relación patrono-empleado o principal-contratista independiente.

El término *empleado* ha sido definido como la persona que rinde servicios a un patrono y a cambio recibe de éste un sueldo, salario, jornal, comisión, bono o cualquier otra forma de compensación. A. Acevedo Colom, *Legislación Protectora del Trabajo Comentada*, 8ya. ed., San Juan, Puerto Rico, 2005, pág. 7, citando a I. Rivera García, *Diccionario de Términos Jurídicos*, 2da. ed. Revisada, Orford New Hampshire, Equity Publishing Corp, 1985, pág. 85.

Por otro lado, el contratista independiente se ha definido como la persona que dada la naturaleza de su función y la forma en que presta servicios resulta ser su propio patrono. Acevedo Colom, *op. cit.*, págs. 7-8.

La relación de patrono y empleado o contratista independiente y principal ha sido examinada en múltiples ocasiones por nuestro más alto foro judicial. El Tribunal Supremo ha expresado que debido a los rasgos característicos que tienen en común la relación entre patrono y empleado o contratista independiente y principal no existe, por lo general, una distinción tajante entre ambas figuras. *S.L.G. Hernández-Beltrán v. TOLIC*, 151 D.P.R. 754, 766 (2000); *Fernández v. A.T.P.R.*, 104 D.P.R. 464, 465 (1975). Al momento de determinar si entre dos partes existe una relación de patrono y empleado o contratista independiente y principal, la caracterización o denominación que dichas partes hagan respecto a la naturaleza de sus relaciones en su contrato o acuerdo no es decisiva. *S.L.G. Hernández-Beltrán v. TOLIC, supra*, pág. 766; *Bengochea v. Ruiz Torres*, 103 D.P.R. 68, 71 (1974). Así pues, para realizar la determinación en cuanto a qué tipo de relación se desarrolló entre las personas, es preciso examinar las circunstancias en que se desenvolvieron las partes y los hechos que originaron la controversia, esto, claro está, considerando los factores señalados por nuestra jurisprudencia para tales propósitos. *S.L.G. Hernández-Beltrán v. TOLIC, supra*, pág. 768.

Entre los factores que se deben tomar en consideración para dilucidar si una persona se desempeña como un contratista independiente están los siguientes: (i) la naturaleza, extensión y grado de control por parte del principal; (ii) el grado de iniciativa o juicio que despliega el empleado; (iii) la propiedad del equipo; (iv) la facultad de emplear y el derecho a despedir; **[3]** (v) la forma de compensación; (vi) la oportunidad de beneficio y el riesgo de pérdida; (vii) la retención de contribuciones. *S.L.G. Hernández-Beltrán v. TOLIC, supra*, pág. 768; *Martínez Pérez v. U.C.B.*, 143 D.P.R. 554, 564 (1997). El criterio de control sobre la ejecución del trabajo es rector para dilucidar el tipo de relación laboral existente entre los litigantes. *S.L.G. Hernández-Beltrán v. TOLIC, supra*, pág. 768; *Mariani v. Christy*, 73 D.P.R. 782, 798 (1052) A tono con este criterio, si existe en la relación laboral el derecho o autoridad para intervenir o controlar, independientemente de que se ejercite, o si se controlan los medios y la forma de hacer el trabajo, la persona a cargo de la labor sería un empleado y no un contratista independiente. *Pérez v. Hato Rey Bldg. Co.*, 100 D.P.R. 882, 888 (1972); *Mariani v. Christy, supra*, pág. 798. La relación de contratista independiente surgiría cuando la persona que realiza el trabajo sólo está sometida a la voluntad del patrono en cuanto al resultado, pero no en cuanto a los medios y manera de cumplimentarlo. También es compatible con el status de contratista independiente la retención por el dueño del derecho a inspeccionar y supervisar. *Pérez v. Hato Rey Bldg. Co., supra*, pág. 888; *Mariani v. Christy, supra*, pág. 798.

El Tribunal Supremo ha manifestado que la decisión final en cuanto a si estamos ante la figura de un contratista independiente no depende de un factor aislado, sino que hay que examinar el conjunto de circunstancias en las que se desenvuelve la relación laboral entre las partes. *S.L.G. Hernández-Beltrán v. TOLIC, supra*, pág. 768; *Fernández v. A.T.P.R., supra*, pág. 465.

Apliquemos la normativa descrita al caso ante nuestra consideración.

## III

El señor Carlos Ortiz señala como primer error que incidió el Tribunal de Primera Instancia al no realizar una determinación de hechos de negligencia comparada en cuanto a la parte demandante, el señor Aponte y al no emitir una conclusión de derecho que atribuyera porcentaje de responsabilidad a éste. Alega que existe evidencia en el expediente del caso que demuestra que el señor Aponte había sufrido daño corporal en dos ocasiones previo al accidente objeto de la demanda y que también existe evidencia en el expediente que apunta a que el señor Aponte caminaba de forma negligente por la carretera donde ocurrió el accidente de tránsito.

La doctrina de negligencia comparada, predicada en la segunda oración del Artículo 1802 del Código Civil, [4] *supra*, permite reducir la compensación de un demandante en proporción *a la negligencia que se le imputa*. Conforme a esta doctrina, la negligencia concurrente o contribuyente del demandante sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximirle totalmente de responsabilidad. *De León, Hernández v. Hosp. Universitario,* **2008 J.T.S. 147**, 174 D.P.R. ___ (2008); *Colón Santos v. Coop. Seg. Mult. P.R.,* **2008 J.T.S. 53**, 173 D.P.R. ___ (2008).

Sin embargo, de un análisis de los documentos presentados en el caso no surge evidencia que demuestre o acredite algún tipo de conducta negligente atribuible al señor Aponte o que los daños sufridos sean consecuencia de incidentes previos al accidente que trata esta controversia. Por un lado, el señor Carlos Ortiz no presentó evidencia alguna que demostrara o acreditara que el daño sufrido por el señor Aponte se debiera a accidentes previos, ni nexo causal de éstos con los daños sufridos y probados ante el tribunal. Por otro lado, el señor Carlos Ortiz tampoco presentó documento alguno que acreditase negligencia por parte del señor Aponte.

El Tribunal de Primera Instancia en sus determinaciones de hechos señala que según los informes médicos estipulados por las partes, el señor Aponte, para la fecha del accidente, sufrió las lesiones y recibió el tratamiento mencionado en la primera parte de esta sentencia. La trascripción de la vista en su fondo, lejos de demostrar algún tipo de negligencia por parte del señor Aponte, más bien confirma las determinaciones de hechos realizadas por el Tribunal de Primera Instancia en cuanto a la negligencia del señor Ángel Ortiz y los daños ocasionados al señor Aponte. Toda vez que el señor Ángel Ortiz en su testimonio reafirmó que al momento de ocurrir el accidente lo hacía de manera negligente, que estaba transitando una carretera recta al momento del impacto y las luces del carro estaban en buenas condiciones. (Transcripción de la Vista en su Fondo de 21 de mayo de 2007, págs. 59-60 y 67) Además, el señor Ángel Ortiz declaró que impactó al peatón con el guardalodo y cristal del lado derecho del pasajero. (Transcripción de la Vista en su Fondo de 21 de mayo de 2007, págs. 86-87)

Las determinaciones de hechos del Tribunal de Primera Instancia nos merecen deferencia y respeto, por lo que los tribunales apelativos se abstendrán de intervenir con la apreciación de la prueba y la determinación de daños que un foro de instancia haya emitido, salvo que se demuestre pasión, prejuicio, error manifiesto o parcialidad. *De León, Hernández v. Hosp. Universitario, supra.* El señor Carlos Ortiz no evidenció que las determinaciones de hechos realizadas por el Tribunal de Primera Instancia fueran realizadas mediante pasión, prejuicio, error manifiesto, parcialidad o craso abuso de discreción. Tampoco fundamentó sus alegaciones con prueba documental que evidenciara éstas y de los documentos examinados no surge prueba que demuestre negligencia por parte del agraviado señor Aponte. No erró el Tribunal de Primera Instancia al no atribuir negligencia comparada en cuanto a la parte demandante, toda vez que del expediente no surge evidencia alguna de negligencia comparada por parte del señor Aponte.

Apunta el señor Carlos Ortiz, como segundo error, que el Tribunal de Primera Instancia incidió al determinar que la relación entre los hermanos Ángel y Carlos Ortiz era una de empleo y no de contratista. Arguye que los hechos demostraron que la relación entre los codemandados era de contratista independiente y

no de empleado. En su escrito alega ciertos hechos relacionados con la autorización de la labor de trabajo que el señor Ángel Ortiz realizó. Sin embargo, los hechos alegados por el señor Carlos Ortiz no tienen fundamento en la prueba desfilada en juicio. De la transcripción de la vista en su fondo no surge evidencia testifical alguna sobre tales alegaciones y tampoco existe ninguna determinación de hecho realizada por el tribunal a.estos efectos.

La prueba que surge del expediente demuestra hechos que apoyan las determinaciones y el análisis del Tribunal de Primera Instancia. De un examen de la transcripción de la vista en su fondo y conforme a las determinaciones de hechos realizadas por el foro sentenciador, surge que en el momento del accidente de tránsito, el señor Ángel Ortiz realizaba gestiones que eran parte del trabajo asignado por su hermano, el señor Carlos Ortiz. El señor Ángel Ortiz testificó en la vista en su fondo que entró en posesión del vehículo con el que ocurrió el accidente porque ese día lo recogió en Aibonito, según le había encomendado su hermano, **[5]** como parte del negocio de vehículos reposeídos que tenía Carlos Ortiz. (Transcripción de la Vista en su Fondo, 21 de mayo de 2007, págs. 61-62).

De igual manera, surge de los documentos examinados y de la transcripción de la vista en su fondo que el señor Ángel Ortiz trabajaba mensualmente con su hermano, el señor Carlos Ortiz. (Transcripción de la Vista en su Fondo, 21 de mayo de 2007, pág. 81). El señor Carlos Ortiz le encomendaba realizar la transportación de los vehículos, y era éste quien lo llamaba o le dejaba la grúa al señor Ángel Ortiz. (Transcripción de la Vista en su Fondo, 21 de mayo de 2007, pág. 81). El señor Carlos Ortiz le proveía a su hermano los materiales necesarios para realizar el trabajo de transportación de los vehículos, incluyendo la grúa y los documentos necesarios para realizar tal tarea. (Transcripción de la Vista en su Fondo, 21 de mayo de 2007, pág. 61) Estas circunstancias demuestran que el señor Carlos Ortiz tenía la autoridad y el grado de iniciativa para intervenir en las tareas que realizaba su hermano Ángel Ortiz, además de controlar los medios y la forma de realizar el trabajo, puesto que las tareas de transportación de vehículos eran encomendadas por el señor Carlos Ortiz y era él quien le proveía a Ángel los documentos y materiales necesarios para realizar el trabajo. Todas estas circunstancias son indicativas y características de una relación patrono empleado.

Examinados los factores que la jurisprudencia ha establecido en cuanto a la distinción de la relación laboral entre empleado y contratista independiente y evaluada la totalidad de las circunstancias de la relación laboral en este caso, concluimos, tal y como lo determinó el foro sentenciador, que la relación laboral entre el señor Carlos Ortiz y su hermano Ángel Ortiz era una de empleado y no de contratista independiente. No erró el Tribunal de Primera Instancia en cuanto a la determinación sobre la naturaleza de la relación laboral en el caso.

## IV

Por los fundamentos antes expuestos, se confirma la sentencia emitida por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2009 DTA 133**

**1.** La sección 5-201 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley 141 de 20 de julio de 1960, 9 L.P.R.A. sec. 871, establece lo siguiente:

"[T]oda persona que condujere un vehículo con voluntario o malicioso desprecio por la seguridad de personas o propiedades, será culpable de conducir temerariamente e incurrirá en delito menos grave, y convicta que fuere, se le castigará con una multa no menor de cien (100) dólares ni mayor de quinientos (500) dólares o cárcel por un término no menor de un mes ni mayor de seis (6) meses, o ambas penas a discreción del Tribunal."

**2.** Estos trámites incluyeron mociones de desistimiento de las partes, la consolidación de los casos DDP2001-0649, DDP2004-0037 y DDP2006-0080, una sentencia parcial que desestimó la reclamación contra los codemandados Banco Bilbao Vizcaya Argentaria y el Lcdo. Héctor Colón Atienza, y un recurso de *certiorari* ante el Tribunal de Apelaciones, entre otros.

**3.** De existir el poder de terminar el contrato en cualquier momento, la persona utilizada no sería un contratista independiente. *Pérez v. Hato Rey Bldg. Co.,* 100 D.P.R. 882, 889 (1972); *Mariani v. Christy*, 73 D.P.R. 782, 799 (1052).

**4.** Este artículo, en su parte pertinente, establece: "[l]a imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización" 31 L.P.R.A. sec. 5141.

**5.** Durante sus declaraciones en la vista, el señor Ángel Ortiz admitió en varias ocasiones que fue encomendado por su hermano a buscar el vehículo. (Transcripción de la Vista en su Fondo, 21 de mayo de 2007, págs. 61-62)